**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

| | |
|---|---|
| JAMES WEATHERSPOON | PLAINTIFF |
| VS. | CIVIL ACTION NO. 3:09CV74-LRA |
| SHERIFF TOBY TROWBRIDGE, JR. | DEFENDANT |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the Motion for Summary Judgment filed by Defendant Sheriff Toby Trowbridge, Jr.  Plaintiff James Weatherspoon has not filed a written response to the motion, but the Court has considered his testimony at the omnibus hearing in response to Defendant's motion.  Having considered the pleadings, Plaintiff's testimony, and the applicable law, the Court finds that the motion is well advised and should be granted for the reasons set forth below.

**I.   Facts & Procedural History[1]**

Plaintiff was incarcerated in the Madison County Detention Center ("MCDC") as a pre-trial detainee from December 1, 2007, through March 25, 2009.  He contends that in June, 2008, he injured his knee after slipping in a puddle of water while jogging on the rec yard.  About a month later, according to Plaintiff, Sheriff Trowbridge took him to a Jackson hospital.[2]  When the hospital inquired as to payment, Sheriff Trowbridge refused to pay for his treatment, and he was returned to MCDC without seeing a physician.  His knee bothered him thereafter with pain.  He also lost a tooth in June 2008.  When he requested dental care at MCDC, he was denied care and suffered from pain as a result.

---

[1]The facts set forth in the first paragraph are taken from Plaintiff's complaint, as amended, and from his sworn testimony.  The facts set forth in the paragraphs that follow are taken from the evidence presented by Defendant Trowbridge, including Weatherspoon's medical and jail records.

[2]In his amended complaint, ECF No. 17, p. 2, Plaintiff alleges that Sheriff Trowbridge actually transported him to the hospital.  At the omnibus hearing, Plaintiff did not testify that he was taken there by the Sheriff.

In rebuttal to Plaintiff's claim that he drove Plaintiff to the hospital, Sheriff Trowbridge has executed an Affidavit[3] swearing as follows:

1. I am currently the Sheriff of Madison County, Mississippi, and have held that position continuously since January 2000.

2. During the time the plaintiff was housed in the Madison County Detention Center from December 1, 2007, through March 25, 2009, I never participated in the taking of any pretrial detainee or prisoner from the MCDC to any medical care provider, including any hospital, for the receipt of medical care.

The medical records confirm that Plaintiff submitted a sick call slip on May 28, 2008, stating that his "knee has fluid on it" for two days.[4] He was evaluated by the nursing staff on the same day, and Portable Medical Diagnostics, Inc., x-rayed Plaintiff's knee that day. The treating radiologist noted "mild degenerative arthritic changes with no evidence of fracture or dislocation." A physician prescribed Naproxyn for pain, and the nursing staff provided it, all on May 28.

Plaintiff did not complain of knee pain again until July 6, 2008, when he submitted a sick call slip. He was evaluated and prescribed pain medication, a knee brace, and exercises. On July 23, 2008, Dr. Gary McCarthy, an outside physician, evaluated Plaintiff for his complaint of knee pain. Dr. McCarthy had x-rays taken and billed the appointment to the Madison County Sheriff's Department.

Plaintiff submitted a third sick call on September 2, 2008, complaining that his right knee was giving out on him and aching at night. He was evaluated by the nursing staff the next day, placed on the list to see a physician, and provided Ibuprophen.

None of the medical records indicate that Sheriff Trowbridge was involved in Plaintiff's medical care in any fashion.

---

[3]Affidavit of Sheriff Toby Trowbridge, Jr., dated March 26, 2010, ECF No. 31-7.

[4]The medical records referred to herein are contained in ECF No. 31-6, pp. 54-88.

After his conviction, Plaintiff was transferred to CMCF, and screened on March 25, 2009.[5] He came with a knee brace but made no complaints of knee pain or of dental problems. CMCF authorized the knee brace. X-rays taken of his right knee were normal. On April 21, 2009, he submitted a sick call request for knee problems. He reported that he fell in Madison County and needed surgery on his right knee for a "torn bone on an x-ray" and that his left knee had fluid on it.[6] Nursing staff noted the recent normal x-ray and the minimal swelling. He was x-rayed again on July 21, 2009; the x-rays were normal except for "early degenerative changes bilaterally." Physicians at CMCF have treated Plaintiff thereafter for arthritis to both knees. One physician noted in the record that Plaintiff reported to him that he had arthritis in his knees "caused by playing basketball in high school and college."

Plaintiff also complained that he did not receive dental care when he filled out a request form for dental care after losing a tooth in June 2008. His medical records and jail files contain no complaints by Plaintiff that he lost a tooth in June 2008 or complained about tooth pain. He filled out sick request slips in May, June, July, September, and December of 2008, and in February and March 2009, but none of these requests mention dental pain.[7] After he was transferred to CMCF, Plaintiff made one complaint of dental pain on August 27, 2009. He told MDOC medical services that he had a tooth pulled "in Rankin County and they left some in there and it's pushing out of my gum...." A dentist examined Plaintiff on September 2, 2009, and noted that Plaintiff's tooth was healing well and no treatment was necessary.[8]

---

[5]The CMCF records are contained at ECF No. 31-8, pp. 2-105.

[6]ECF No. 31-8, p. 84.

[7]ECF No. 31-6.

[8]ECF No. 31-8, pp. 103-04.

**II.**     **Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes. *Id*. at 322. There is a genuine factual dispute between the parties only "when a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).

**III.**    **Analysis**

Plaintiff contends that his Eighth Amendment rights were violated. Since he was a pretrial detainee when incarcerated in MCDC, his right to receive medical care is based on the procedural and substantive due process guarantees of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520 (1979). *See also Hare v. City of Corinth,* 74 F.3d 633, 650 (5th Cir. 1996)(en banc) ("the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm during their confinement"). Since the standards are generally the same, no distinction will be made.

Deliberate indifference to a prisoner's serious medical needs is an actionable Eighth Amendment violation under §1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07

(1976). The standard for finding "deliberate indifference is a subjective inquiry." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The conduct must result in "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1997). Plaintiff must show that Sheriff Trowbridge was actually aware of a risk of harm to him, yet consciously disregarded or ignored it. *Id.*

In *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), the Court of Appeals for the Fifth Circuit summarized the case law regarding the standard of "deliberate indifference" to the medical concerns of prisoners in part as follows:

> ... A prison official acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it." Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.... "Deliberate indifference 'is an extremely high standard to meet.'"

*Id.* at 346 (citations and footnotes omitted).

In this case, Plaintiff was obviously not pleased with the care he received at the MCDC for his injured knee. Yet, a prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2010); *Norton v. Dimaza,* 122 F.3d 286, 292 (5th Cir. 1997).

The law does not provide a remedy for Plaintiff under the circumstances he has stated, and the Court finds that Plaintiff's allegations are legally frivolous. The medical records rebut any assertion that Defendant Sheriff Trowbridge refused to treat Plaintiff, or ignored his complaints, or intentionally treated Plaintiff incorrectly. Instead, the medical records confirm that Plaintiff received medical care for his injured knee, including x-rays, a brace, instructions for exercises, and pain medication. The records confirm that Plaintiff had no serious injury to his knee; his pain and discomfort were

caused primarily by mild degenerative arthritic changes in his knee.  No fracture or dislocation was ever diagnosed.  MCDC provided him with an outside evaluation by Dr. McCarthy and paid for that appointment.  The nursing staff at MCDC evaluated Plaintiff the day he complained, not a month later.  Neither the jail records or the medical records indicate that Sheriff Trowbridge was involved in Plaintiff's medical care at any stage.  His complaints regarding dental care are not corroborated by the records.  Even so, Plaintiff has not shown a serious medical need regarding his alleged dental problem.

This is a case wherein Plaintiff may *disagree* with the manner in which the MCDC treated his knee problem.[9]  At most Plaintiff could show negligence; these types of cases do not rise to the level of constitutional violations.[10]

Plaintiff stated in his amended complaint [ECF No. 17] that the Sheriff took him to the hospital in Jackson himself and then refused to let him get care when he was told he would have to pay for it.  Yet his sworn testimony does not corroborate this claim, nor do any of the records.  The Court rejects this contention as implausible and speculative.  In pleading, a plaintiff must "'raise a right to relief above a speculative level,' *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 554-55 (2007)).  Plaintiff has failed to do so both in his pleadings and by his oral explanation of his claims.

The *Gobert* standard cannot be met in this case, and the Court shall dismiss Plaintiff's complaint on the merits of his claims.

---

[9] *See Norton,* 122 F.3d at 292 (affirming dismissal of suit as frivolous where prisoner claimed medical personnel should have tried different methods of diagnosis and treatment).

[10] *See Street v. Corrections Corp. of America*, 102 F.3d 810, 816 n. 13 (6th Cir. 1996) (patient's disagreement with his physicians over the proper medical treatment alleges nothing more than a medical malpractice claim, and is not cognizable as a constitutional claim.)

**IV.     Conclusion**

For these reasons, the Court finds that Plaintiff's Complaint is frivolous[11] and fails to state a claim on which relief may be granted under 28 U.S.C. 1915(e)(2)(B).  Since this case is dismissed pursuant to these provisions of the Prison Litigation Reform Act, it will be counted as a "strike."[12]   If  Plaintiff receives "three strikes" he will be denied *in forma pauperis* status and be required to pay the full filing fee to file a civil action or appeal.

IT IS, THEREFORE, ORDERED that Defendant Sheriff Toby Trowbridge, Jr.'s Motion for Summary Judgment, ECF No. 31, is granted, and  Plaintiff's Complaint, as amended, is dismissed with prejudice.  Final Judgment in favor of Defendant Sheriff Trowbridge shall be entered on this date.

SO ORDERED, this the 29th day of November, 2010.

---

[11]"Frivolous" in this context is a legal term of art that indicates that, although the Plaintiff's allegations are serious to him, and may, indeed, be based on a tangible injury, the theory on which his claims are based are "indisputably meritless" in a legal sense. See *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995).

[12]28 U.S.C. § 1915(g) states:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

                                           /s/ Linda R. Anderson
                              UNITED STATES MAGISTRATE JUDGE